UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY HENRY-HOWARD,

       Plaintiff,                   CIVIL ACTION NO. 07-13774

       v.                               DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF                MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**CORRECTED**[1]
**REPORT AND RECOMMENDATION**

## I. Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be granted, plaintiff's motion be denied, and the decision denying benefits be affirmed.

## II. Background

On November 19, 2004, plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that she was disabled due to a herniated disc and back pain, with a disability onset date of April 17, 2004.

---

[1] In the original Report and Recommendation (D/E #13), the bottom of page 6 and much of page 7 was mistakenly formatted in the Adobe conversion. This is the only correction.

(Tr. 50-52, 60-61, 345-347) Plaintiff, a registered nurse, completed high school and one year of college, and has a work history including employment as a patient care associate, nursing assistant, and cashier. (Tr. 66-67, 77)

The Social Security Administration (SSA) denied plaintiff's claim on March 23, 2005. (Tr. 39-44, 348-352) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 45-46) The hearing was held on May 14, 2007, before ALJ Michael F. Wilenkin. Plaintiff was represented by counsel and testified at the hearing. (Tr. 384-410)

On June 13, 2007, the ALJ issued a decision denying plaintiff's claim. (Tr. 15-27) The ALJ determined that plaintiff had the following impairments: "multi-level lumbar degenerative disc disease status post laminectomy and fusion of L5-S1." (Tr. 20) The ALJ also determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 20-21) The ALJ further determined that plaintiff retains the residual functional capacity ("RFC") to:

> lift 10 pounds occasionally; lift less than 10 pounds frequently; sit for six of eight hours in a work day with a sit/stand option; stand or walk for two of eight hours in a work day with a sit/stand option; push or pull without limitation; perform postural activities occasionally except those requiring twisting or torquing of the torso to the extremes of ends of range of motion; perform any manipulative functions except those requiring use of the upper extremities at or above shoulder height; see, hear and speak without limitation; and perform work in any environment where the pace of productivity is not directed by an external source over which she has no control. Mentally, the claimant can understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the

> public, supervisors and co-workers; respond appropriately to work
> pressures in a usual work setting; and respond appropriately to
> changes in a routine work setting. [Tr. 21-22.]

Considering plaintiff's age, education, work experience and RFC, the ALJ determined that, while plaintiff could not perform her past relevant work, "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." (Tr. 25) Accordingly, the ALJ found that plaintiff was no under a disability as defined by the Social Security Act. (Tr. 27) Plaintiff was 35 years-old at the time of the ALJ's decision. (Tr. 25)

Plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 9, 13-14) The Council denied the request on August 11, 2007. (Tr. 5-8) The ALJ's decision thus became the final determination of the Commissioner.

On September 7, 2007, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As indicated above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends that the ALJ's ruling was not based on substantial evidence because the ALJ failed to properly assess plaintiff's credibility or pose an accurate hypothetical question to the vocational expert. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

## III. Legal Standards

### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). See also 42 U.S.C. § 423(d)(2)(A). The claimant bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920. In Foster, id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV. Analysis**

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. Specifically, the ALJ stated:

> Let's assume the existence of a hypothetical individual, one who is situated as is the claimant in terms of age, education and past

relevant work. With respect to such a person, please assume that she is able to sit six of eight hours in an eight-hour work day, stand or walk two of eight hours of an eight-hour work day. Lift as much as ten pounds only occasionally and lesser weights somewhat more frequently. A well established history of significant low back difficulty in the form of disk pathology, history of two surgical interventions, ongoing discomfort and symptomatology affecting the lower back and left lower extremity, which while undoubtedly disconcerting for purposes of this particular query is not of sufficient severity, intensity or frequency to interfere with otherwise functioning in the manner I suggested. Assume a hypothetical individual as a consequence of these various deficits must not be required to engage in any repetitive stooping, squatting, kneeling, crouching or bending. She should not be required to engage in prolonged or protracted walking or climbing of stairs and ladders. She should not be required to twist or torque her torso throughout the extremes of range of motion. She should not be required to use her upper extremities at or above shoulder level. Assume that she should be allowed to change positions between sitting, standing and walking as an option. Assume there is some reactive psychiatric deficit related to long-term perceptions of ongoing pain and discomfort which are understandable under the circumstances, but which have had no significant impact on in terms of her cognitive functioning. Notwithstanding these deficits or the modalities employed to treat the same, she is able to understand, remember and follow instructions, complete assigned tasks within a time and appropriate fashion. Respond appropriately to customary work pressures, supervisory personnel, coworkers and the like. A caveat in this respect, I would suggest more related to the underlying back pathology than anything else is that the performance of work activity she should not be required to perform that type of work wherein the productivity thereof is dictated by some external source over which she has no control such as an assembly line or conveyor belt. She should be allowed to work at her own pace she should be able to tolerate daily production requirements. Lastly, you may assume that the deficits of the modalities applied to treat the same do not warrant that the hypothetical individual lie down or otherwise be recumbent during the course of a typical work day. In consideration of those limitations, would such an individual be able to perform any of the work performed by the claimant in the

> past? If not, would she then be able to perform any work that exists in the geographic areas I mentioned? [Tr. 406-408]

In response to the hypothetical, the VE testified that, while such an individual would not be able to perform plaintiff's past relevant work, the hypothetical person would be able perform jobs such as a visual inspector, sorter, hand packager, assembler and the like. (Tr. 408) The VE testified that there are approximately 7,000 such jobs in the Detroit area and 14,000 such jobs in the state of Michigan. (Tr. 408)

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).

In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of her limitations. Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on her argument that ALJ erred in assessing her credibility.

At the hearing, plaintiff testified that she lives in a three-story house, but she has slept on the first floor since November 2006. (Tr. 387) Plaintiff has trouble sleeping at night and she spends most of the day lying down because of the pain. (Tr. 400, 402) Specifically, plaintiff has pain and numbness in her back and left leg. (Tr. 394-95) Plaintiff has participated in four rounds of physical therapy, but it has not helped her condition. (Tr. 393) Plaintiff also underwent two surgeries, but the first surgery made her symptoms worse and her second surgery failed to provide any relief. (Tr. 396-397) Plaintiff takes Vicodin and Neurotin for the pain. (Tr. 397) She also uses a walker and she wears a back brace at least four hours a day. (Tr. 398-399) Plaintiff claimed that she could no longer drive a car due to pain in her lower back and left leg. (Tr. 388) She needs her sister to help her bathe, cook, and clean the house. (Tr. 401) Plaintiff estimated that she could stand for 10 minutes at a time, sit for 20 minutes at a time, and lift up to 10 pounds. (Tr. 401-02)

The ALJ determined that plaintiff's claims regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 22) In making that conclusion, the ALJ noted:

> the record most consistently reveals the claimant's complaints of
> pain and limitations in excess of clinical and objective finding,
> especially at the time of her alleged onset date. These
> inconsistencies detract from the overall credibility of her
> allegations. It is of note that the claimant's pain worsened while

> pregnant in 2005. The claimant's own reports of daily activities on December 2004 reflects higher degree of attention and concentration than would be expected given her alleged degree of pain – actually suggesting a lesser degree of pain. Her own treating doctors, but for one, have found a greater ability to function than the claimant alleges, and have questioned her allegations. [Tr. 24]

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Id. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a); see also Walters, supra, 127 F.3d at 531. Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a); 20 C.F.R. 416.929(a).

As noted by the ALJ, plaintiff's testimony is not supported by the objective medical evidence found in the record. The medical evidence, including multiple MRIs and two surgeries, displays the existence of plaintiff's impairment, but the existence of the impairment is not in doubt and was accepted by the ALJ in forming plaintiff's RFC. (Tr. 20-22) What is in dispute is how extensive plaintiff's impairments are and the effect they have on plaintiff's ability to work.

With respect to the effect of plaintiff's impairments, the medical evidence provides little corroboration for plaintiff's testimony. On September 4, 2003, plaintiff complained of back pain to Dr. David Jackson, claiming that she had suffered from back pain since October 2002. (Tr. 132-133) However, it appears plaintiff was never treated for such pain and, on February 5, 2004, plaintiff did not complain of back pain when being examined by Dr. Adel El-Magrabi. (Tr. 148-149) Moreover, Dr. El-Magrabi did not find anything wrong with plaintiff's back at that time. (Tr. 148-149)

One month later, plaintiff reported to Dr. Lourdes Andaya that she was having debilitating pain. (Tr. 241) According to plaintiff, the pain had started seven or eight months prior. (Tr. 241) Despite plaintiff's claims, Dr. Andaya's findings were benign. (Tr. 241-242) During the course of Dr. Andaya's treatment of plaintiff, an April 2004 MRI revealed disc pathology and L4-5 nerve root impairment (Tr. 161, 239), but a subsequent examination only displayed minimal abnormalities. (Tr. 239-240) By July 2004, Dr. Andaya only found "mild sensory peripteral loss." (Tr. 237-238) A November 21, 2004 MRI reveal small disc protrusion at L5-S1, but no significant compressive or impingement of nerve roots. (Tr. 152-152) That MRI also revealed some degenerative changes, but none that were significant. (Tr. 153)

After giving birth in August 2005, plaintiff reported an increase in her back pain. (Tr. 289) A November 8, 2005 MRI revealed tiny focal central disc protrusion at L5-S1 with no significant central canal or neural foraminal stenosis, mild disc degenerative disease without significant central canal or neural foraminal stenosis, and tiny focal left lateral disc protrusion at L2-L3 with no significant nerve root compression. (Tr. 274-275) In response to that MRI, Dr.

Setti Rengachary noted that plaintiff's complaints regarding the intensity of her pain exceeded what would be expected. (Tr. 287) Dr. Rengachary did also note that there is not always a correlation between the size of a disc and the intensity of the pain. (Tr. 287)

Another MRI, performed on May 7, 2006, found "[d]isc protrusions and hypertrophic facet arthopathy." (Tr. 271) On June 13, 2006, plaintiff underwent a laminectomy. (Tr. 186) Following the laminectomy, Dr. Rengachary, on June 29, 2006, stated that plaintiff should not do work involving heavy lifting, bending or twisting, but he also stated that plaintiff should be able to work following the completion of physical therapy. (Tr. 284) Plaintiff continued to complain of back pain following the surgery and, on November 28, 2006, plaintiff underwent fusion and instrumentation at L5-S1. (Tr. 213)

Beginning in January 2007, plaintiff began treatment with Eric Kovan. (Tr. 315-317) Dr. Kovan's initial diagnosis was "resolved back pain with radicular pain status post surgery x2 underlying fusion" and he treated plaintiff with medication and epidural injections. (Tr. 315-317) A subsequent EMG did identify L5 radiculopathy, but the treatment notes did not indicate a degree of clinical findings that would correspond to plaintiff's allegations. (Tr. 310-314, 319-320)

The opinions formed by the physicians in the record also tend to support the ALJ's credibility determination. As noted by the ALJ, plaintiff's "own treating doctors, but for one, have found a greater ability to function than the claimant alleges" (Tr. 24) Dr. Amouzegar is the one doctor who found that plaintiff could not work. On October 14, 2004, Dr. Amouzegar stated that plaintiff could not work for six months. (Tr. 168) In 2005, Dr. Amouzegar stated that

plaintiff would be unable to work forever (Tr. 306) and, on March 6, 2006, Dr. Amouzegar stated that plaintiff would never work or that it was unknown when she could work. (Tr. 182) However, to the extent Dr. Amouzegar opines that plaintiff is disabled and work, the ALJ is free to disregard the opinion. An ALJ is not bound by a treating physician's statement that a claimant is "disabled" or "unable to work." The regulations specifically provide that such a statement is not a "medical opinion" and is thus not entitled to any special deference. 20 C.F.R. §§ 404.1527(a)(2), 404.1527(e)(1); 416.927(a)(2); 416.1527(e)(1). The question of whether a claimant is disabled is reserved entirely to the Commissioner. 20 C.F.R. § 404.1527(e)(1); 20 C.F.R.416.927(e)(1). Moreover, as noted by the ALJ, Dr. Amouzegar's opinion regarding plaintiff's ability to work is not supported by the findings of the other treating physicians or the objective medical evidence in the record. (Tr. 25)

On February 14, 2005, the state agency physician performing an RFC assessment on plaintiff, Dr. Azimi, found that plaintiff had a less restrictive RFC than that found by the ALJ. Specifically, Dr. Azimi found that plaintiff retained the capacity to occasionally lift twenty pounds, frequently lift ten pounds, stand or walk six hours in an eight hour work day, sit about six hours in an eight hour work day, and occasionally climb stairs, balance, stoop, kneel, crouch and crawl. (Tr. 107)

In March 2007, Dr. Essam Montasir opined that plaintiff had a RFC that was only slightly more restrictive than that eventually found by the ALJ. Specifically, Dr. Montasir found that plaintiff could occasionally lift up to ten pounds, frequently carry up to ten pounds, occasionally carry up to twenty pounds, sit four hours without interruption, stand thirty minutes

without interruption, walk thirty minutes without interruption, sit for four hours in an eight hour work day, stand for two hours in an eight hour work day, and walk for one hour in an eight hour work day. (Tr. 228-229) Plaintiff could also occasionally climb stairs, climb ladders, and stoop, but she can never kneel, crouch, crawl or operate a motor vehicle. (Tr. 231-232) Moreover, Dr. Monstasir performed his consultative examination while plaintiff was still in rehabilitation following her November 2007 surgery and he indicated that, in the usual case, rehabilitation improves a plaintiff's condition following back surgery. (Tr. 226)

Those opinions of Dr. Montasir and Dr. Azimi, in addition to the lack of restrictions found by plaintiff's treating physicians other than Dr. Amouzegar, support the ALJ's credibility determination. As discussed above, while Dr. Amouzegar's opinion appears to support plaintiff's claims, it was properly rejected by the ALJ.

Further support for the ALJ's credibility determination is found in the fact that plaintiff's own doctors questioned her credibility. As noted by the ALJ, some of plaintiff's treating physician expressly questioned plaintiff's credibility. (Tr. 24) On December 2006, Dr. Rengachary found that plaintiff's descriptions of her pain "bizarre" and that plaintiff:

> insists on using a walker, although she does not have any
> significant motor deficit. There is some concern that [sic] whether
> she has a substantial functional overlay. At this time, she has
> maintained that she wants to go on disability. I am very concerned
> that she is doing all the maneuvering to go on disability. [Tr. 278]

A July 2004 note by Dr. Andaya also reflects that plaintiff "would like to be on disability." (Tr. 235) Similarly, but in relation to an ankle injury, Dr. Kovan questioned plaintiff's indications of pain, limitations and decreased sensation. (Tr. 312) While other medical sources did not

-13-

expressly doubt plaintiff's credibility, some did and that questioning provides support for the ALJ's credibility determination.

Lastly, plaintiff's daily activities also support the ALJ's credibility determination. As found by the ALJ, plaintiff's "own reports of daily activities on (sic) December 2004 reflect a higher degree of attention and concentration than would be expected given her alleged degree of pain - actually suggesting a lesser degree of pain." (Tr. 24) At that time, plaintiff stated that she grooms herself, drives, shops for two to three hours at a time, handles money, and goes to physical therapy. (Tr. 70-73) While plaintiff also testified that she was limited in other daily activities, the ALJ did not rely solely on the existence of the daily activities while making the credibility determination and, to the extent the reports show plaintiff being active in her daily life to an extent contrary to the rest of her testimony, they support the ALJ's findings.

The ALJ observed plaintiff at the hearing and found that her "attention and concentration were good, even though she appeared uncomfortable while sitting." (Tr. 24) As noted above, an ALJ's credibility determination is accorded great weight and deference in part because the "ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters, 127 F.3d at 531. Given the ALJ's observations, the lack of corroborating medical evidence, the majority of doctors' opinions, the questioning of plaintiff's credibility by her own doctors and plaintiff's daily activities, the ALJ had a substantial basis for the credibility determination in this case.[2]

---

[2]Plaintiff also briefly argues that the ALJ's credibility determination was flawed because it did not accept plaintiff's claims of a mental impairment. However, plaintiff's brief fails to point to any testimony by plaintiff on the issue of a mental impairment that was rejected by the ALJ. Without such a showing, plaintiff's credibility argument must fail.

**V. Conclusion**

For the reasons stated above, the court finds that there is substantial evidence in the record to support the Commissioner's disability determination and that no legal errors were made in reaching that determination. The court thus recommends that the Commissioner's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                            s/Virginia M. Morgan
                                            Virginia M. Morgan
                                            United States Magistrate Judge

Dated: June 19, 2008

---

### **PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 19, 2008.

                                            s/Jane Johnson
                                            Case Manager to
                                            Magistrate Judge Virginia M. Morgan